MATTAWAMKEAG LOG DRIVING COMPANY

*vs.*

GEORGE L. BYRON.

Penobscot.    Opinion February. 21, 1906.

*Driving Logs by Chartered Company.    Uniting Drives.    First and Second Drives. Assessments for Tolls and Driving.    Authority of Directors to make Assessments.    Private and Special Laws, 1853, c. 90.    Private and Special Laws, 1899, c. 51, § 3.*

The practice of having two or more drives in order to insure greater expedition in driving to their place of destination all logs both late and early must be deemed a reasonable one.

The difference in the rates of assessment for first and second drives is the obvious result of experience with respect to the actual cost of driving them.

Ordinarily, a first drive will be the least expensive because it will have the most favorable pitch of water and the labor and expense of driving will ordinarily increase as the water subsides below a favorable driving pitch.

The case at bar shows that the assessment in question was made in entire accordance with the provisions of the plaintiff's charter and therefore is binding upon the defendant irrespective of the question of first and second drives.

The particular question submitted is whether the defendant's logs were driven in the first or second Mattawamkeag drive. And upon this proposition it is *held* that as there were two drives from Jellerson boom to Scatterack boom the second one cannot be deemed to have lost its identity, for the purposes of the assessment authorized by the provisions of the plaintiff's charter, simply because by reason of high water, it had to be driven along with the logs constituting the first drive.

The directors of the plaintiff company who are authorized by the plaintiff's charter to make the assessment "in anticipation of the actual cost and expense of driving" cannot predict with certainty in any year that the logs will not be turned out of Scatterack boom on account of high water. They are therefore compelled to make the assessments upon their knowledge of the drives that leave Jellerson boom, and for this purpose they are reasonably justified in assuming that the logs first driven from Jellerson boom constitute the first drive and those that are next driven must constitute the second drive. This would seem to be the only practical and available criterion by which they can distinguish the logs coming in the first drive from those coming in the second drive, for the purpose of making their assessment "in anticipation of the actual cost and expense of driving."

On report. Judgment for plaintiff.

Assumpsit on account annexed to recover assessments and tolls made by the plaintiff company on the defendant's logs for driving the same in the spring of 1900, from Jellerson boom, so called, on the Mattawamkeag River to their places of destination.

The main contention was whether or not the defendant's logs were driven in the first Mattawamkeag drive, so called, or in the second Mattawamkeag drive, so called. In the year 1900, the assessments for driving logs in the first drive, together with the tolls thereon, amounted to 42 cents per thousand feet boom scale, while the assessment and tolls for logs in the second Mattawamkeag drive of that year amounted to 47 cents per thousand feet boom scale.

The case was reported to the Law Court on an agreed statement of facts.

The case fully appears in the opinion.

*Appleton & Chaplin,* for plaintiff.

*Louis C. Stearns,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J. This is an action to recover assessments and tolls made by the plaintiff company on defendant's logs for driving them in the spring of 1900 from Jellerson boom, so-called, on the Mattawamkeag River to their places of destination. The case is reported to this court on an agreed statement of facts.

By the act incorporating plaintiff company (chapter 90 Private & Special Laws of 1853) and by acts amendatory thereto the company is required to drive logs," which *from time to time* may come into the Jellerson and Oxbow booms to the Penobscot boom (section 3, chapter 51, P. and S. Laws 1899) at as early a period as practicable."

The corporate limits of the company extended from Jellerson boom, so-called, in the town of Haynesville on the Mattawamkeag River to the junction of that river with the Penobscot River.

There are three booms on the Mattawamkeag River within their corporate limits, Jellerson boom, Oxbow boom, situated below in Drew Plantation, and Scatterack boom, which is the lowest boom on Mattawamkeag River, about 30 miles below Jellerson boom, and is located near the junction of that river with the Penobscot River.

According to the method of driving the logs on the Mattawamkeag River that has prevailed with the plaintiff company for many years when a sufficient quantity of logs had been collected in Jellerson boom the drive was started. The company or its contractor ordered the boom to be opened and the logs were driven down the Mattawamkeag into Scatterack boom, and thence down the Penobscot River to their places of destination at or above Penobscot boom. This was known as the first drive.

As soon as the first drive had left Jellerson boom the boom was closed to collect the whole or a part of the remaining logs to be driven as the case might be, and when a sufficient number had collected in the boom a second drive was started and driven down in the same manner as the first. Generally all the logs to be driven were driven in the first or second drive but sometimes a third drive was also made.

In 1900 the first drive was started from Jellerson boom and driven to Scatterack as before described. The contractors were then notified not to cut away Scatterack owing to the high water in the Penobscot River, which made it impossible for the Katahdin Pulp and Paper Company to sort the logs at Lincoln.

Then the crew were ordered back to Jellerson boom where they had to wait three or four days for the defendant's logs, which were cut on Beaver Brook fourteen miles above Jellerson boom, and also logs belonging to other parties. After these had all reached Jellerson boom the second drive was started, and defendant's logs together with all the logs belonging to other parties were driven down the river to Scatterack.

When the second drive started from Jellerson boom the first drive was then in Scatterack and had not been turned out on account of the high water as before stated, and the second drive containing defendant's logs arrived in Scatterack before the first drive had been turned out. After the high water had sufficiently subsided, all the logs in Scatterack boom, both those that were driven in the first drive and those that were driven afterward in the second drive, which included the defendant's logs, were turned out together and driven in a body to their places of destination.

In the year 1900 and for many years previous thereto the plaintiff company had assessed the logs for tolls and driving expenses in the different drives separately. In 1900 its assessments for driving the logs in the first drive, together with the tolls thereon, amounted to 42 cents per thousand feet boom scale, while the assessments and tolls for logs in second Mattawamkeag drive of that year amounted to 47 cents per thousand feet boom scale.

The defendant paid the driving assessments and tolls on all his logs at the rate of 42 cents per thousand feet boom scale, claiming that his logs were in the first drive. The company claims that his logs were in the second drive, and that he should pay assessments and tolls amounting to 47 cents per thousand feet boom scale, and this action is brought to recover the difference between the two assessments.

The plaintiff company is required by the mandatory provisions of

its charter to drive all logs in Mattawamkeag River which from time to time come into Jellerson and Oxbow booms. A proper discharge of this imperative duty necessarily involves a division of the logs into two or more drives; and this practice appears to have been uniform and of such long standing prior to 1900 that it must be presumed to have been known to the defendant as well as other operators. In 1900 the first drive which did not comprise the defendant's logs seasonably started from Jellerson boom and reached Scatterack. But by an amendment to the charter enacted the year before (sec. 3, chapter 51, P. & S. Laws of 1899) it was provided that "logs which from time to time may come into Scatterack boom shall not be turned out until the waters in the Mattawamkeag and Penobscot Rivers is at a pitch suitable for sorting out and separating logs of different owners at their several places of destination on said rivers."

When the first drive reached Scatterack the water in Penobscot River was so high that it was impossible to sort the logs at Lincoln and in obedience to this statute orders were promptly "given not to cut away Scatterack." Thereupon a crew was sent back to Jellerson boom to bring down all logs that might come in there belonging to the defendant and other parties. When after several days these had all arrived a second drive comprising the defendant's logs was also driven to the Scatterack Boom where the first drive was still detained on account of the high water. In due time after the water had subsided to a pitch suitable for sorting logs at Lincoln, all the logs in Scatterack Boom including both the first and second drives were turned out together and driven in a body to their place of destination.

The defendant does not and could not reasonably complain that he was subjected to any inconvenience or loss because the first drive was overtaken by the second at Scatterack and the two drives were then united and driven down together. Indeed it is manifest that he received a benefit instead of an injury from the prompt action of the management in thus bringing down his late logs to the boom at the same time as the earlier ones of other parties. But he contends that inasmuch as the first and second drives were mingled and the identity of the second drive comprising his logs was lost after they were turned out of Scatterack boom, he is not liable to pay the

assessment made upon logs of the second drive but can only be required to pay at the rate assessed upon the first drive.

It is the opinion of the court that this contention is without merit. The practice of having two or more drives in order to insure greater expedition in driving to their place of destination all logs both late and early must be deemed a reasonable one. The difference in the rates of assessment for the first and second drives is the obvious result of experience with respect to the actual cost of driving them. Ordinarily, the first drive will be the least expensive because it will have the most favorable pitch of water and the labor and expense of driving will ordinarily increase as the water subsides below a favorable driving pitch.

Section 4 of the original charter of 1853 reads as follows: "Said directors are hereby authorized to make the assessment contemplated in the last preceding section in anticipation of the actual cost and expenses of driving, and in any sum not exceeding, for each thousand feet, board measure, the sum of seventy-five cents, and so in proportion to the distance which any logs or other timber is to be or may be driven between said forks and the places of destination, to be determined by said directors. And if, after said logs or other timber shall have been driven as aforesaid, and all expenses actually ascertained, it shall be found that said assessment shall be more than sufficient to pay said expenses and the sum which shall be assessed as is hereinafter provided for a contingent fund, then the balance so remaining shall be refunded to the said owner or owners in proportion to the said sum to them respectively assessed."

It might properly be observed in the first place that there is nothing in the agreed statement of facts tending to show that the assessment in question was not made in entire accordance with these provisions of the charter and therefore binding upon the defendant irrespective of the question of first and second drives. But the particular question submitted and argued is whether the defendant's logs were driven in the first or second Mattawamkeag drive, and upon this proposition our conclusion is that as there were two drives from Jellerson to Scatterack the second one cannot be deemed to have lost its indentity, for the purposes of the assessment authorized by

the above provision of the charter, simply because, by reason of high water, it had to be driven along with the logs constituting the first drive. The directors of the company who are authorized by the charter to make the assessment "in anticipation of the actual cost and expense of driving" cannot predict with certainty in any year that the logs will not be turned out of Scatterack boom on account of high water. They are therefore compelled to make the assessments upon their knowledge of the drives that leave Jellerson boom, and for this purpose they are reasonably justified in assuming that the logs first driven from Jellerson boom constitute the first drive and those that are next driven must constitute the second drive. This would seem to be the only practical and available criterion by which they can distinguish the logs coming in the first drive from those coming in the second drive, for the purpose of making their assessment "in anticipation of the actual cost and expense of driving."

The entry must accordingly be

> *Judgment for the plaintiff for $37 and interest from the date of the writ.*